```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

RANA KHAN,

                        Plaintiff,

        - against -                      **MEMORANDUM AND ORDER**

AIRPORT MANAGEMENT SERVICES, LLC,        10 Civ. 7735 (NRB)
HUDSON NEWS COMPANY, HUDSON GROUP LLC,
HUDSON GROUP (HG) RETAIL, LLC,
JOHN DOES 1-10,

                        Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Rana Khan ("Khan" or "plaintiff") brings this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Laws. In the instant motion, plaintiff requests that this Court: (1) authorize the distribution of notice of a collective action, along with opt-in consent forms, to potential plaintiffs; (2) direct defendants to disclose the names and last known addresses of potential plaintiffs; and (3) grant equitable tolling of the statute of limitations on the FLSA claims of potential plaintiffs.

For the reasons discussed herein, plaintiff's motion is denied in its entirety.

# BACKGROUND[1]

Defendants Airport Management Services, LLC and Hudson Group (HG) Retail, LLC (collectively "Hudson" or "defendants") operate over 600 stores in over 70 locations across North America. (Fordyce Decl. ¶ 6.) These stores, located at airports and major commuter stations, include both Hudson News shops and shops of various retail brands that are operated as joint ventures.[2]

Defendants' workforce consists of both hourly employees and salaried employees holding managerial titles. With regard to the latter set of employees, defendants maintain at least sixteen different managerial positions. (Yockelson Decl. ¶ 7.) Two of these positions – "Warehouse Manager" and "Operations Manager" – were held by plaintiff during his employment with

---

[1] The background is derived from plaintiff's complaint, the Declaration of Phillip H. Wang ("Wang Decl."), filed July 21, 2011, and the exhibits annexed thereto, the Declaration of Roger Fordyce ("Fordyce Decl."), filed July 21, 2011, the Declaration of Rick Yockelson ("Yockelson Decl."), filed July 21, 2011, the Declaration of Mohammad (Joe) Khan ("Joe Khan Decl."), filed July 21, 2011, and the Reply Declaration of William C. Rand ("Rand Reply Decl."), filed August 5, 2011, and the exhibits annexed thereto.

[2] Defendants emphasize that there are important differences between their airport and commuter locations. Airport locations operate as joint ventures with local Disadvantaged Business Enterprises (pursuant to federal regulations) and usually include both Hudson News shops and shops of retail brands (e.g., Dunkin Donuts). (Fordyce Decl. ¶¶ 8-15.) In contrast, commuter locations typically do not operate as joint ventures and generally consist of Hudson News stores only. (Id. ¶¶ 17-18.) Approximately 70% of Hudson's workforce is employed at airport locations, but plaintiff was employed at two of Hudson's commuter locations – Penn Station and Grand Central Station. (Yockelson Decl. ¶ 6.)

2

defendants.[3]  While defendants emphasize that the responsibilities of an employee of a given title vary depending on the location at which the employee is based, defendants do maintain centralized descriptions of the basic responsibilities associated with each position. (Rand Reply Decl. Ex. C.)  For instance, Warehouse Managers are expected to perform tasks such as "recruit[] and train[] warehouse personnel," "supervise[] and delegate[] tasks to warehouse employees," and "arrange[] monthly meetings with sales representatives to provide information to the General Manager regarding new products on the market." (Id. at 7.)  Similarly, Operations Managers are expected to "assist[] the General Manager in recruiting and developing quality staff at all levels," "ensure[] full adherence to all company policies and procedures," and "perform[] daily inspections in each store to ensure [that] company standards in visual presentation, stock replenishment and housekeeping are maintained." (Id. at 14.)

Defendants hired Khan in September 2009 to serve as a Warehouse Manager for the overnight shift at their Penn Station operation.  (Compl. ¶ 30; Joe Khan Decl. ¶¶ 35-36.)  In November 2009, Khan was transferred to defendants' Grand Central Station

---

[3] The managerial positions also include: "General Manager," "Assistant General Manager," "Human Resources Manager," "Book Operations Manager," "Customer Service Manager," "Merchandising Manager," "Café Manager," "Office Administration Manager," "Loss Prevention Manager," "Store Manager," "Terminal Manager," "Training Manager," "Overnight Manager," and "Bookkeeping Manager." (Yockelson Decl. ¶ 7.)

location, where he worked under the title of Operations Manager. (Joe Khan Decl. ¶ 37.) Khan held this position until he was terminated from his employment in August 2010. (Compl. ¶ 33.) Defendants do not dispute that in both of these positions, Khan regularly worked more than forty hours per week without being provided any overtime pay.[4] (Id. ¶¶ 32, 36, 39.)

Khan alleges that his duties in these roles "did not include managerial responsibilities or the exercise of independent business judgment." (Id. ¶ 40.) Specifically, Khan claims that as a Warehouse Manager, he only "delivered and collected newspapers, worked a cash register, watched customers to prevent theft, stocked shelves, and assisted customers to find merchandise." (Id. ¶ 31.) Khan similarly claims that as an Operations Manager, he "delivered and collected money from cash registers at stores, moved newspapers from stores closing early to stores staying open later, worked a cash register, watched customers to prevent theft, stocked shelves, [] assisted customers to find merchandise, and collected and restocked merchandise." (Id. ¶ 34.)

Khan filed the instant complaint on October 8, 2010. At an initial conference held before this Court on December 9, 2010, the parties agreed to conduct limited discovery to investigate Khan's claims as well as clarify the scope of the class that

---

[4] As of August 2010, Khan's salary was $661 per week. (Wang Decl. Ex. 5.)

4

Khan would seek to represent. This period of brief discovery now having been completed, Khan seeks to proceed as a collective action on behalf of current and former employees of defendants who held a title of "Manager" but were not actually exempt employees within the meaning of the FLSA. In the instant motion, Khan requests that this Court provide authorization for notice and opt-in consent forms to be sent to current and former employees of defendants who potentially meet this criteria.

## LEGAL STANDARDS

### I. FLSA Requirements

The FLSA requires that employers pay an employee one and one-half times the employee's regular rate if the employee works more than forty hours during a work week. See 29 U.S.C. § 207(a)(1). However, employers do not have to pay time-and-a-half to any individual "employed in a bona fide executive, administrative, or professional capacity." Id. § 213(a)(1). Under Department of Labor regulations, the "bona fide executive" exemption applies only to an employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

5

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

## II. Authorization of Collective Action Notice

Section 216(b) of the FLSA provides that an action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). However, district courts in this Circuit consistently follow a two-stage method - recently endorsed by the Second Circuit - in determining whether potential opt-in plaintiffs are indeed "similarly situated." See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010).

In the first stage, the court makes an initial determination whether to send notice to potential opt-in plaintiffs. Id. at 555. A plaintiff's burden at this stage is simply to make a "modest factual showing" that he and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. Id. (internal quotation marks

6

omitted). In a FLSA exemption case, a plaintiff satisfies this burden by "making some showing that there are other employees who are similarly situated with respect to their job requirements and . . . pay provisions," and "who are classified as exempt pursuant to a common policy or scheme." Id. "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id. Importantly, at this first stage, "[a] court need not evaluate the underlying merits of a plaintiff's claims." Damassia v. Duane Reade Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).

If a court does authorize notice to potential plaintiffs, the court will conduct a second inquiry after discovery has been completed. At this second stage, "the district court will . . . determine whether [the] 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. The action may be "de-certified" if the court determines that this requirement is not met. Id.

## DISCUSSION

Because Khan makes the instant motion at the notice stage, he must only make "a modest factual showing" that he and

potential opt-in plaintiffs were victims of a common policy or plan that violates the law. In evaluating whether Khan has satisfied this burden, we rely on the pleadings, affidavits, and declarations submitted by the parties. See Eng-Hatcher v. Spring Nextel Corp., No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *2 (S.D.N.Y. Nov. 13, 2009).

## I. Evidence Submitted by the Parties

To establish the existence of similarly situated individuals, plaintiff relies primarily on his own declaration and the declarations of three former Hudson co-workers. In his declaration, Khan states in pertinent part:

> In addition to myself . . . I am aware and have personal knowledge of other persons employed by Defendant as newsstand workers with the title "manager" who performed the same or similar work as myself. Upon information and belief, Defendant hired at least 40 of such similar newsstand workers with the title "manager" . . . .
>
> I know that others like me were not paid overtime by Defendant because I have spoken to similar employees, including but not limited to Mr. Naeem, Mr. Noor Nabi, Mr. Habib, Miss Rizui, Miss Gul, Miss Rajandar, and Mr. Sam.

(Decl. of Pl. Rana Khan ("Khan Decl.") ¶¶ 17, 20.)

The declarations of Khan's three former co-workers – all of whom were non-exempt hourly employees – contain nearly identical, brief statements alleging that Khan and other Operations Managers performed "clerk activities" rather than

8

managerial functions. (See Decl. of Usama Khan; Decl. of Muhammad Irfan; Decl. of Mohammad Asad.)

In addition to relying on these declarations, Khan points to the fact that decisions by defendants to classify managerial positions as exempt are made on a nationwide level. (Pl.'s Reply Mem. of Law in Supp. of Mot. for Approval of Collective Action Notice ("Pl. Reply") at 2.) Khan further points to the centralized job descriptions that defendants maintain for each managerial position. (Id. at 2.) Khan contends that, for purposes of evaluating the instant motion, these nationwide policies negate the importance of any differences that may exist across defendants' individual operations. (Id. at 2-3.)

Defendants acknowledge that plaintiff's burden at this stage is "modest" but argue that plaintiff has nevertheless failed to meet it. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Approval of Collective Action Notice at 8.) In support of their opposition, defendants submit twenty-three declarations from individuals of various managerial titles employed at Hudson locations across the country. These declarations claim in substance that employees holding the titles of Warehouse Manager or Operations Manager do not have the limited responsibilities claimed by plaintiff, but rather have broad managerial duties. Notably, three of these declarations are from individuals that Khan specifies by name in his declaration as "similar employees"

who were not paid overtime.  (See Decl. of Naeem Haider; Decl. of Samuel Trani; Decl. of Habib Mazumder.)

## II. Analysis

### A. Authorization of Collective Action Notice

Plaintiff has failed to meet his minimal burden of establishing the possibility of similarly situated individuals. We note as an initial matter that plaintiff's reliance on the centralized job descriptions maintained by defendants is misplaced.  While defendants do keep general descriptions of the responsibilities expected of Warehouse Managers and Operations Managers (see Rand Reply Decl. Ex. C), Khan is not attacking the formal policies embodied in these descriptions.  Rather, Khan is asserting that he and other employees were not given duties in conformity with these policies.  To proceed as a collective action when making such a claim, "it is not sufficient for [plaintiff] to show that he and the proposed class . . . operated under the same job description." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010). "Instead, he must show that he and the other [employees] were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." Id.

Khan has not produced sufficient evidence that there are other employees who may share his claim.  As the Second Circuit

10

has made clear, the requisite modest factual showing "cannot be satisfied simply by unsupported assertions." Myers, 624 F.3d at 555 (internal quotation marks omitted). Khan's motion relies precisely on such unsupported assertions. He claims to have personal knowledge that "[defendants] hired at least 40 . . . similar newsstand workers," but he does not identify these 40 workers by name or specify the source for this claim. See Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (rejecting plaintiff's motion for collective action notice when it was based on the "conclusory allegation" that there were "over 20 current and former employees that are similarly situated to Plaintiffs"). While Khan does identify several individuals by name who he considers to have been "similar employees" (without clarifying whether these individuals are among the 40 to whom he refers), none of these individuals has submitted declarations supporting Khan's claims, and as previously referenced, several have submitted declarations expressly rejecting the notion that they do not perform managerial functions. The declarations submitted in support of Khan's motion from his three former co-workers are also lacking, as they provide vague and conclusory statements that fail to specifically identify the other managers who are allegedly similarly situated to plaintiff.[5]

---

[5] Defendants suggest that there are also reasons to doubt the credibility of

We also note that even after five months of preliminary discovery, Khan has been unable to produce a single other individual interested in participating as a plaintiff in this case. Although not determinative, we find this fact to be telling.[6] See Eng-Hatcher, 2009 WL 7311383, at *3 n.6; Cf. Bowens v. Atl. Maint. Corp., 546 F.Supp. 2d 55, 83 (E.D.N.Y. 2008) (noting several other individuals who had expressed interest in participating as party plaintiffs); Dumitrsescu v. Chow Enters. Ltd, No. 07 Civ. 3601 (PKL), 2008 WL 2600667, at *6 (S.D.N.Y. June 30, 2008) (same); Hens v. Clientlogic Operating Corp., No. 05-CV-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006) (same).

While plaintiff's burden at this stage is modest, it is not non-existent. Guillen, 750 F. Supp. 2d at 480. In fact, courts in this Circuit have routinely declined to authorize collective

---

each of these declarants. Mohammed Asad was terminated by Hudson for allegedly acting abusively toward a fellow employee. (Joe Khan Decl. ¶ 32.) Usama Khan was hired to Hudson's Grand Central Station operation allegedly at the recommendation of plaintiff and was terminated after having failed to report to work. (Decl. of Edwin Soto ¶ 64.) Finally, Muhammad Irfan apparently misstates in his declaration the length of time he worked for Hudson, claiming to have been an employee for seven months when he was actually an employee for less than two months. (Joe Khan Decl. ¶ 34.) While these facts certainly do raise doubts as to the credibility of the declarants, we need not rely on such credibility assessments because the declarants' assertions are lacking on their face.

[6] Khan does cite to a lawsuit filed in June 2010 in which an employee at defendants' Ft. Lauderdale Airport operation brought similar allegations to those brought by Khan. (Pl. Reply at 3.) However, this action was settled in March 2011 following its transfer from the Southern District of New York to the Southern District of Florida. (Wang Decl. ¶ 10.) We find that the mere existence of this action does not add to plaintiff's showing. See Eng-Hatcher, 2009 WL 7311383, at *3 n.4. We are also not persuaded that there is probative value to a union grievance that was filed at an unspecified date prior to 2005, especially considering that there has not been a single other union grievance filed since. (See Wang Decl. Ex. 2 at 127-28.)

action notice when faced with similarly lacking evidence. See, e.g, id. at 477-80; Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509-10 (S.D.N.Y. 2010); Eng-Hatcher, 2009 WL 7311383, at *3-5; Prizmic v. Armour, Inc., No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2-3 (E.D.N.Y. June 12, 2006); Flores v. Osaka Health Spa, Inc., No. 05 Civ. 962 (VM)(KNF), 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006); Morales, 2006 WL 278154, at *2-3. Likewise, we deny plaintiff's request for approval of collective action notice.

**B. Disclosure of Contact Information**

In some circumstances, even when a court does not authorize notice of a collective action, the court may still order defendants to disclose contact information of relevant employees to allow plaintiff further opportunity to discover information that would support treatment as a collective action. See 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1807 (3d ed. 2011). However, because Khan has produced virtually no evidence to support his claim that a collective action is appropriate – even after having been granted an extended period of time to develop such evidence - we decline to facilitate the expenditure of additional resources

13

and reject plaintiff's request to order disclosure of contact information.[7] See Prizmic, 2006 WL 1662614, at *3.

**C. Equitable Tolling**

Finally, plaintiff requests that we equitably toll the statute of limitations on FLSA claims of any additional plaintiffs who may join the litigation. We decline to inquire into the suitability of equitable tolling at this juncture given that plaintiff has not adequately demonstrated that there are similarly situated prospective plaintiffs for whom equitable tolling may be justified. See Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266 (MLC), 2007 WL 4546100, at *4 (D.N.J. Dec. 19, 2007).

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for authorization of collective action notice, discovery of contact information, and equitable tolling is denied without prejudice.

---

[7] We note that even if Khan had been able to make a showing of similarly situated potential plaintiffs, his proposed class would clearly be overbroad. Khan requests that the potential class include any current or former employee within the applicable time period who held a title that included the term "Manager." As previously referenced, defendants maintain at least sixteen different managerial titles, with the highest such position being that of General Manager. Khan implicitly concedes in his allegations that General Managers have far different (and greater) responsibilities than Warehouse Managers or Operations Managers. Moreover, Khan does not even claim to have personal knowledge that individuals with titles other than Warehouse Manager or Operations Manager have been misclassified as exempt. Thus, we fail to understand why Khan would continue to seek such an overbroad class.

14

Dated:   New York, New York
         November 16, 2011

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**

William C. Rand, Esq.
Law Office of William Coudert Rand
228 East 45th Street, 17th Floor
New York, NY 10017

Dana L. Gottlieb, Esq.
Jeffrey M. Gottlieb, Esq.
Gottlieb & Associates
150 E. 18 St., Suite PHR
New York, NY 10003

**Attorney for Defendants**

Phillip H. Wang, Esq.
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020-1104